FILED

2018 Oct-11  PM 07:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | | |
|---|---|---|
| LILLIE H. COOLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NUMBER |
| v. | ) | |
| | ) | 1:17-CV-895-ACA |
| DOLGENCORP, LLC, | ) | |
| | ) | **ORAL ARGUMENT** |
| Defendant. | ) | **REQUESTED** |

## PLAINTIFF'S BRIEF IN OPPOSITION TO THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COUNSEL FOR PLAINTIFF:

Heather Newsom Leonard
HEATHER LEONARD, PC
2105 Devereux Circle
Suite 111
Birmingham, AL 35243
(205) 977-5421 – voice
(205) 278-1400 – facsimile
Heather@HeatherLeonardPC.com

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    <u>Statement of Facts by Plaintiff that Require Denial
of Summary Judgment</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    <u>Plaintiff's Response to Defendant's Statement of Facts</u> . . . . . . . . . . . 11

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

    I.    ALL DISPUTES OF MATERIAL FACT MUST BE RESOLVED
IN FAVOR OF THE PLAINTIFF. . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    II.    DEFENDANT TERMINATED PLAINTIFF BECAUSE
OF HER AGE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    III.    THE DEFENDANT TERMINATED MRS. COOLEY BECAUSE
OF HER DISABILITY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

INTRODUCTION

Rule 56 of the Federal Rules of Civil Procedure requires this Court to deny the Defendant's motion for summary judgment because on more than one occasion, Mark Seeger expressed his bias against Mrs. Cooley's age and physical impairments by telling her that at her age, it was time for her to retire if she could not do her job 100%. Employees testified Mr. Seeger and assistant manager Sheila Green threatened and coerced employees into giving false statements that Mrs. Cooley worked them off the clock to manufacture evidence to terminate her. Mr. Seeger then presented this "evidence" to Human Resources ("HR") and partnered with HR to terminate Mrs. Cooley.

STATEMENT OF FACTS

A.      Statement of Facts by Plaintiff that Require Denial of Summary Judgment

1.      At the time Defendant terminated Mrs. Cooley, she was sixty years old. (Ex 7, Cooley Depo, p. 6:9-10). She had worked for the Defendant since 2002 and served as a store manager since 2005 without receiving any discipline. (Ex 10, Cooley Dec, ¶¶ 2-5, 24).

2.      In 2012, Ms. Cooley experienced an on-the-job injury to her foot that limited her in her ability to stand, ascend/descend stairs and ladders, and stoop/squat. (Ex 7, Cooley Depo, pp. 31:3-34:8, 35:18-36:5, 42:19-43:17, Ex 10, Cooley Dec, ¶¶ 9-11). Per her doctor's restrictions, Ms. Cooley was on light duty from 2012 through

her termination. (Id.). Through the time of her termination, she wore a medical boot on her foot, off and on, and when she was not wearing the boot, she was wearing a brace. (Id.). Ms. Cooley requested accommodations from Defendant for her foot in 2012, 2013, and 2014 because she was limited in her ability to stoop, climb, squat and/or stand.  (Ex. 10, Cooley Dec, ¶ 11).

3.     Mark Seeger became Ms. Cooley's District Manager ("DM") on January 5, 2014. (Ex 9, Seeger Depo, p. 111:15-17).

4.     Later that month, Mr. Seeger investigated a call from an employee named Laura White. (Id., pp. 121:8-122:8). In response to Ms. White's complaint, Sheila Green, who was a sales associate at the time, submitted a truthful statement in defense of Mrs. Coolie. (Ex 8, Green Depo, pp. 158:18-19, 159:7-13; Ex 17, Green Statement). Ms. Green wrote "Lillie is a great manager. She is for this store and Dollar General.  She follows everything to the letter from the office, to the floor and the backroom." (Id). Shortly thereafter, Ms. Green became an assistant manager in Mrs. Cooley's store. (Ex 8, Green Depo, pp. 57:5-7; 64:6-12).

5.     In March 2014, Mrs. Cooley received a performance evaluation completed by Mr. Seeger's predecessor but delivered by Mr. Seeger that rated her as "very good" and noted she complied with Defendant's Code of Business Conduct and Ethics as well as applicable laws and regulations. (Ex 10, Cooley Dec, ¶ 14).

6.      Ms. Cooley noticed Mr. Seeger subjected her to heightened scrutiny. (Ex 10, Cooley Dec., ¶15).  She observed and heard from other managers that Mr. Seeger targeted the oldest store managers in the district for termination.  (Ex 7, Cooley Depo, pp. 115:6-161:6, 194:6-18). He had a reputation of getting rid of older employees and was nicknamed the "hatchet man." (Id.).

7.      In April 2014, Mr. Seeger told Sheila Green "he had plans" for her and that there was a store for which he wanted her to be the manager. (Ex 8, Green Depo, pp. 66:1-16, 75:15-78:16). He began scheduling Ms. Green to work at other stores several times a week to train to become a manager. (Id., pp. 66:20-67:10).

8.      As the result of Mr. Seeger sending Ms. Green to other stores and leaving Mrs. Cooley short-staffed, Mrs. Cooley complained to him that taking Ms. Green out of the store was putting her in a bind because with her foot she was limited in her ability to be able to stand and stock. (Ex 7, Cooley Depo, pp. 130:13-131:14, 135:19-136:8, 140:13-18, 144:3-145:5, 145:21-146:6; Ex 10, Cooley Dec, ¶¶ 16, 21-22). Mr. Seeger responded to Mrs. Cooley that at her age she needed to think about retiring if she could not do her job at 100%.  (Id.) Mrs. Cooley responded she could not think about retirement because she needed her job. (Id.). When this conversation occurred, Mrs. Cooley had her foot propped up and had been seeking permission through workers' compensation to return to the doctor for treatment. (Cooley Ex 7, Cooley Depo, pp. 145:21-146:6)

9.      In April, May, or June 2014, Connie Scott, Mrs. Cooley's daughter, complained to Mark Seeger that Mrs. Cooley needed an accommodation for her foot. (Ex 5, Scott Depo, pp. 20:21-22:23, 45:22-46:21; Ex 7, Cooley Depo, pp. 190:3-191:4; Ex 10, Cooley Dec, ¶ 23). Mr. Seeger rolled his eyes and responded that "if she can't do her job at 100 percent, perhaps it's time to retire . . . I've already told her it's time – maybe she should look for something else or . . . think about retirement." (Id.).

10.      In late May 2014, Sheila Green complained to Mr. Seeger that Mrs. Cooley was having difficulty physically doing work and as a result it was putting a lot of labor on Ms. Green. (Ex. 8, Green Depo, p. 145:6-18; Doc. 31-6, Green Statement of May 20, 2014, pp. 3-6 of 9). She also complained to Rodney Casey that she wanted to get rid of Mrs. Cooley because she was "too old and couldn't work like she used to be able to do." (Ex. 15, Casey Handwritten Statement; Ex 3, Casey Depo, pp. 13:9-18, 92:13-97:2, 97:20-98:23). She told Michael Cooper that she didn't feel Mrs. Cooley could perform her duties as a manager, there needed to be a new manager, and that the only way she could do that would be to talk to the District Manager ("DM"), Mark Seeger . (Ex. 6, Cooper Depo, p. 40:1-43:17).

11.      Mr. Seeger and Ms. Green made a plan to get rid of Mrs. Cooley, and Brandon Hurst, a lead clerk key-holder, told Mr. Cooper that they needed his help. (Id., pp. 86:9-87:10, 124:10-125:12; Ex 13, Statement of Michael Cooper). Later,

prior to Mr. Seeger meeting with Mr. Cooper to take a statement about Mrs.

Cooley, Ms. Green told Mr. Cooper it would be in his best interest to go along with

saying something bad about Mrs. Cooley, and that there was a strong possibility he

would be fired if he did not. (Id., p. 35:1-36:18, 108:7-16). When Mr. Cooper met

with Mr. Seeger, it appeared to Mr. Cooper that Mr. Seeger was looking for a way

to fire Mrs. Cooley. (Id. 109:17-110:4). Mr. Seeger implied how Mr. Cooper

should write his answers, and "[p]retty much if we didn't write it a certain way,

that we would be in jeopardy of being terminated." (Ex. 6, Cooper Depo, p. 33:2-

8). Mr. Cooper lied when he wrote in response to Mr. Seeger's questions that Mrs.

Cooley worked him off the clock. (Id. 37:5-13).

12.     During this time, Mr. Seeger was redoing store offices and asked Mrs.

Cooley's husband, Alan Cooley, to assist him. (Ex 4, A. Cooley Depo, pp. 15:14-

17:9; 19:18-22; 23:6-10; Ex 7, L. Cooley Depo, pp. 99:1-103:3; Ex 10, Cooley

Dec, ¶¶29(a), 29(d), 29(j)). Mr. Seeger asked Mr. Cooley to help him hang

peg/cork boards and shelves. (Id.).

13.     On June 24, 2018, Mrs. Cooley's doctor completed a work status form that

was included in Defendant's medical file that continued her light duty status

limiting her to lifting a maximum of 20 pounds, carrying objects of no more than

10 pounds, and restricting her from squatting and kneeling. (Ex 16, Work Status

Form). Mr. Seeger testified that had Mrs. Cooley been put on light duty, he would have received an email about it. (Ex 9, Seeger Depo, p. 114:1-18).

14.     On July 7, 2014, Mr. Seeger posed several questions to Mrs. Cooley (Ex 7, Cooley Depo, pp 95:7-98:22). Mrs. Cooley told him she had never worked anybody off the clock and that nobody had her permission to be working off the clock. (Ex. 7, Cooley Depo, pp. 95:7-96:3; Ex 9, Seeger Depo, 131:16-18). With respect to some questions, he told her what to write as answers. (Id., pp. 110:20-111:1).

15.     On July 11, 2014, Mr. Seeger terminated Mrs. Cooley, telling her it was for "working people off the clock." (Ex 7, Cooley Depo, pp. 129:2-5; 152:21-153:4; Ex 9, Seeger Depo, pp. 135:17-136:8; Ex 10, Cooley Dec, ¶¶ 24-26).

16.     Mrs. Cooley denied working people off the clock. (Ex 10, Cooley Dec, ¶ 26). Mrs. Cooley did not work people off the clock. (Id., ¶25). She did not alter employee time to reflect times different than what they had worked. (Id., ¶29(m); Ex 7, Cooley Depo, pp. 84:12-85:4; 85:5-11; 93:14-94:9).

17.     Mr. Seeger promoted Sheila Green to replace Mrs. Cooley. (Ex 18, Interrogatory Answers, p. 8, # 11; Ex 9, Seeger Depo, p. 44:10-22). Ms. Green did not have a disability and was almost five years younger than Mrs. Cooley. (Ex 8, Green Depo, pp. 8:5-6, 168:8-15).

18.     On the evening of July 14, 2018, Mrs. Cooley submitted a Termination

Dispute Form to the Defendant in which she complained Mr. Seeger "has been on

me since he first came to be the DM over my district. I felt like I could never

please him and I was being targeted based on my age . . . He had two older

managers transfer out of the district because they felt like they were being targeted

because of their age as well . . . I feel as though I was falsely terminated without

due process . . ." (Ex 11, Cooley Termination Dispute Form).

19.     The Defendant opened a file on Mrs. Cooley's complaint on July 15, 2014 at

10:53 am. (Ex 1, 30(b)(6) Depo, p. 93:5-16). The Defendant did not interview

anyone involved in Mrs. Cooley's termination. (Id., pp. 84:18-85:8). Defendant

called Mrs. Cooley at 12:22 pm that same day and informed her that it was closing

its investigation. (Id. 119:5-9). Even though reviews of the complaints are

generally completed within 2-3 weeks, Defendant gave less than an hour and a half

to Mrs. Cooley's complaint. (Id.; Ex 11).

20.     Less than two weeks later, on July 28, 2014, Defendant received a complaint

from Michael Cooper:

> I went to Sheila two days before I was fired and told her that I didn't
> feel right lying on my former manager Lillie. Sheila and Mark Seeger
> told me that I would lose my job if I didn't sign a statement saying
> that Lillie made me work off the clock. I was scared for my job and I
> went along with their story even though I knew it wasn't true. The
> more I thought about this the more it bothered me and I wanted to be
> honest. Sheila told me I better keep my mouth closed or else.

> I feel as though I was fired for wanting to tell the truth. I never should
> have lied on my former manager but felt if I didn't I would be
> terminated. There are not a lot of jobs in Talladega and I have a wife
> to support.

(Ex 12, Cooper Termination Dispute Form).

21.    Defendant did not speak with either Ms. Green or Mr. Seeger to investigate

Mr. Cooper's complaint. (Ex 8, Green Depo, p. 165:6-11; Ex. 9, Seeger Depo, pp.

140:16-141:20).

22.    The Defendant also received a complaint of age discrimination from Rodney

Casey in which he wrote:

> I was accused of working off the clock when all I was doing was
> sitting at the manager's desk writing a personal note after I clocked
> out. I was not performing Dollar General duties. I feel like Sheila was
> looking for a reason . . . to get rid of me because I wouldn't go along
> with her story that my former manager Lillie forced us to work off the
> clock and I also feel as though as I terminated [sic] because I was
> older and they can hire someone younger to do the job and pay them
> less.
>
> I felt threatened and harassed at work if I did not lie from [sic] my
> DM and Sheila Green. My former manager was fired because they
> said she made us work of [sic] the clock and that was not true. I also
> know they were wanting to fire all of the older employees and hire
> younger folks and pay them less.

(Ex 14, Casey Termination Dispute Form).

23.    An hour and fourteen minutes after receiving Mr. Casey's complaint, the

Defendant closed its file on it, dismissing it without investigation. (Ex 3, Casey

Depo, 99:1-5, 106:16-108:2; 113:1-116).  Defendant did not talk to or interview

Mr. Casey about his complaint. (Id.). Defendant did not talk to or interview Sheila

Green or Mark Seeger about the complaint. (Ex 8, Green Depo, p. 4:4-17; Ex. 9,

Seeger Depo, pp. 142:16-143:17).

24.     Defendant issued to Mr. Cooper and Mr. Casey checks and general releases.

(Exs 19-20, Checks and Releases).[1]   The general releases applied to any

employment claims, including discharge and discrimination.  (Id.).  Ms. Green

called both men back to the store to pick up the checks, telling them they had to

sign the release to get the checks and if they did not take them, they would not be

able to get another job in retail.  (Ex. 3, Casey Depo, pp. 64:11-66:2; Ex 6, Cooper

Depo, pp. 69:19-70:18).

25.     Even though other store managers under Mr. Seeger's supervision were

accused of wage and hour violations, Mrs. Cooley is the only person who was

terminated. (Ex. 9, Seeger Depo, p. 50:5-8).  Jay Moses, a store manager six years

younger than Mrs. Cooley, was accused of a wage and hour violation but only

received a write-up. (Id, p. 49:7-50:4). Christine Stewart, a store manager thirteen

years younger than Mrs. Cooley, was accused of and admitted to changing her

employees' time so that they were not paid for all the time they worked. (Id., pp.

52:14-53:15, 54:11-63:2, 65:2-67:4). She was not disciplined. (Id.)[2] Even though

---

[1]      Defendant prepared checks and releases for other employees at the store as well.
[2]      Ms. Stewart submitted a two weeks' notice and resigned. (Ex 9, Seeger Depo, pp. 52:14-53:15, 65:2-11).

Defendant found Ms. Stewart violated age and hour policy, there was no

discussion about terminating her for the wage and hour violation.  (Id, pp. 66:2-9,

67:1-4).

B.      Plaintiff's Response to Defendant's Statement of Facts

2.      Admitted but clarified. The Defendant's wage an hour policy applies to all

employees, regardless of position. (Ex 9, Seeger Depo, pp. 75:9-12, 103:5-104:8;

Ex 2, Broussard Depo, pp. 35:5-21). Any employee who chooses to work off the

clock is liable for a wage and hour violation and is subject to termination. (Id.).

Every employee is obligated to report if they are aware someone is working off the

clock. (Id)

6.      Disputed and unsupported. Mrs. Cooley did not tell or direct Ms. Green to

work off the clock. (Ex 7, Cooley Depo, pp. 94:10-19; Ex. 8, Green Depo, p.

109:15-110:21; Ex. 10, Cooley Dec, ¶ 29(a)). Mr. Cooley did not regularly perform

work at the store; the only work he performed was at the request of Mr. Seeger.

(Ex 4, A. Cooley Depo, pp. 15:10 –17:9, 19:18-22:11, 23:6-10; Ex. 6, Cooper

Depo, pp. 66:12-67:13; Ex. 7, L. Cooley Depo, pp. 69:8-72:2, 99:1-103:3; Ex. 10,

Cooley Dec. ¶ 29(a)). The evidence cited by the Defendant for this fact does not

reference Mr. Cooley doing work at the store; it does not support paragraph 6.

9.      Disputed. Plaintiff did not instruct nor imply to Ms. Green she should work off the clock. (Ex 7, Cooley Depo, pp. 94:10-19; Ex. 8, Green Depo, p. 109:15-110:21; Ex. 10, Cooley Dec, ¶¶ 29(a), 29(c)).

10.      Disputed. The only work performed by Mr. Cooley was at the request of Mr. Seeger. (Ex 4, A. Cooley Depo, pp. 15:10 – 17:9, 19:18-22:11, 23:6-10; Ex. 6, Cooper Depo, pp. 66:12-67:13; Ex. 7, L. Cooley Depo, pp. 69:8-72:2, 99:1-103:3; Ex. 10, Cooley Dec. ¶¶ 29(a), 29 (d), 29(e)).

11.      Disputed. Plaintiff adopts her response to paragraph 10 and adds she disputes Mr. Hurst's statement. (Ex 7, Cooley Depo, pp. 115:6-120:20, 123:6-15).

12.      Disputed.  Plaintiff adopts and incorporates by reference her responses to paragraphs 10 and 11.

15.      Disputed. Ms. Green did not work these hours, nor did Defendant believe she worked these hours. (Ex. 10, Cooley Dec, ¶ 29(f); Ex. 22, Green Check and release). Defendant only compensated Ms. Green, who earned $15.25 an hour $146.49 for work she conducted for Defendant.  (Ex 22).  This is less than 10 hours.

16.      Disputed. Mr. Casey recanted his statement which was coerced by Mr. Seeger and Ms. Green as part of an effort to manufacture a reason to terminate Mrs. Cooley. (Ex 15, Casey Statement; Ex 14, Termination Dispute Form; Ex 3,

Casey Depo, pp. 13:9-18, 37:4-15, 38:13-39:2, 55:20-57:10, 57:16-58:11, 89:4-90:5; 92:13-95:8, 96:15-97:2,97:20-98:23).

17.     Disputed. Mr. Cooper recanted his statement; it was coerced by Mr. Seeger and Ms. Green as part of an effort to manufacture a reason to terminate Mrs. Cooley. (Ex 13, Cooper Statement; Ex 12, Cooper Termination Dispute; Ex 6, Cooper Depo, pp. 33:2-8, 35:1-36:18; 37:5-13, 40:1-43:17, 108:7-16, 109:17-110:4, 124:10-125:12).

18.     Disputed. Mrs. Cooley disputes the allegations in Ms. VanVleck's statement. (Ex. 7, Cooley Depo, pp. 123:16-127:8; Ex. 10, Cooley Dec, ¶29 (i).

19.     Admitted but clarified. The Defendant did not cite Mrs. Cooley's full testimony which was that she admitted Mr. Cooley worked in the store at the request and direction of Mr. Seeger. (Ex. 10, Cooley Dec., ¶29 (j)).

20.     Disputed, unsupported, and contains hearsay. Defendant did not file in evidence any alleged video of Ms. Green working off the clock. Mr. Seeger's testimony about what any alleged recording shows is inadmissible as hearsay under Rule 801 and 802 of the Federal Rules of Evidence. Plaintiff adopts her responses above that dispute Ms. Green worked off the clock.

21.     Disputed, unsupported, and contains hearsay. Plaintiff adopts and incorporates by references her responses above to paragraph 20 and to the allegations Mr. Cooley did work in the store.

22.     Disputed and unsupported. Mrs. Cooley did not adversely edit time. (Ex. 10, Cooley Dec, ¶29(m), Ex. 7, Cooley Depo, pp. 85:5-11, 93:14-94:9). Defendant did not file nor produce any documents showing adverse time edits made by Mrs. Cooley. (Ex 2, Broussard Depo, pp. 41:17-42:11). When presented with the Defendant's documents, she could not point to a single time edit nor identify any instance where Mrs. Cooley edited time. (Id., 41:17-49:22, 51:7-52:12. 53:9-12; 84:13-87:04). Even if she had been able to identify an edit, Ms. Broussard testified she had no way of knowing whether any edits could have been made by Ms. Green or Mrs. Cooley. (Id. 44:18-22).[3] Sheila Green had the ability to edit time. (Ex 10, Cooley Dec, ¶29(m)). Further evidence disputing this paragraph comes from the time records which show that the time allegedly worked off the clock by employees occurred when Mrs. Cooley was not working. (Ex. 21, Calendars). The disputed time occurs during closing shifts when Ms. Green and Mr. Casey were present as the closing managers/key-holders. (Id)

23.     Disputed and unsupported. The evidence cited by Defendant only states Ms. Broussard reviewed times clocked out and alarm times. It does not say Ms. Broussard reached any conclusions. Defendants' time records show that Ms. Cooley rarely closed and on the dates of alleged "owed time," she was not the

---

[3]     Sheila Green testified she did not observe Mrs. Cooley making any adverse edits to time. (Ex. 8, Green Depo, pp. 89:22-90:02).

closing manager. (Ex 21, Calendars and Time Records). Due to the nature of the way Defendant's stores have to be closed, there is always a delay between clocking out and the alarm being armed because all employees must clock out for the closing key holder to run the closing report before they can leave. (Ex 10, Cooley Dec, ¶ 29(n)).

24-25.  Disputed that the decision was Ms. Broussard's. Defendant testified Seeger made the decision in partnership with Ms. Broussard. (Ex 1, 30(b)(6) Depo, pp. 82:24-84:2; Ex 18, Interrogatories, No. 5).  Mr. Seeger collected all the information that was used to terminate Mrs. Cooley and presented it to Ms. Broussard. (Ex 2, Broussard Depo, 102:14-15, 103:15-104:16, 105:12-20; Ex 9, Seeger Depo, p. 157:16-23). Ms. Broussard did not talk to any witnesses or review any video.  (Ex 2, Broussard Depo, pp. 63:2-64:5, 74:7-75:4, 102:14-152, 103:15-104:16).  She relied on Mark Seeger to gather the information and relied on his representations. (Id., p. 105:12-20) Ms. Broussard did not recall who first suggested Mrs. Cooley's termination. (Ex 2, Broussard Depo, p. 83:14-17). After learning of Mr. Cooper's and Mr. Casey's allegations of coerced statements, Ms. Broussard had concerns that the statements given to her by Mr. Seeger could have been coerced. (Ex 2, Broussard Depo, pp. 180:4-181:22).

26.    Disputed. Ms. Cooley's age is contained in payroll/personnel documents which Ms. Broussard would have to review if she was involved in the decision to terminate. (Ex 10, Cooley Dec, ¶29(p)).

27.    Disputed. Seeger knew Mrs. Cooley's age. (Ex 10, Cooley Dec. ¶29(q)). He told her that at her age, she should retire as set forth in Plaintiff's Fact paragraph 8.

28.    Disputed. Ms. Cooley communicated with HR about her impairment. (Ex 10, Cooley Dec., ¶29(r)).

29.    Disputed. Plaintiff adopts paragraph 2 of her fact statement.

30.    Disputed. Plaintiff adopts paragraph 2 of her fact statement and adds that Mr. Casey believed he saw Mrs. Cooley wearing her boot at the time of her termination. (Ex 3, Casey Depo, pp. 43:1-44:5).

## ARGUMENT

I.    ALL DISPUTES OF MATERIAL FACT MUST BE RESOLVED IN FAVOR OF THE PLAINTIFF.

Under Federal Rule of Civil Procedure 56(c), summary judgment is only proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).  The party seeking summary judgment bears the burden of informing the court of the basis for its motion and identifying those portions of the record

which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Only after the moving party meets its burden does Rule 56(e) require the nonmoving party to produce evidence of facts showing that there is a genuine issue for trial. *Id.* at 324. All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

If the moving party does not bear the burden of proof at trial, as is the case here, it can satisfy its initial burden on summary judgment by producing affirmative evidence negating a material fact and demonstrating that the non-moving party will be unable to prove its case at trial or affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. These burdens require more than a simple statement that the non-moving party cannot meet its burden at trial;[4] it requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. *Fitzpatrick*, 2 F.3d at 1115-16.[5]  If the movant meets its

---

[4]     Because the Defendant bears the burden of proof of showing why summary judgment must be granted, this brief and evidentiary materials filed in support of it, are based on the arguments presented by the Defendant.  The Defendant should not be permitted in its reply brief to file new evidence, raise new arguments, and/or expand under-developed arguments because the Plaintiff will not have an opportunity to reply.

[5]     Defendant cannot create an absence of evidence by omitting it from the record. Defendant failed to file evidence showing the disputed issues of fact in this case, intentionally omitting testimony about discriminatory remarks and coercion to manufacture a pretext to terminate Mrs. Cooley.

initial burden, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, or may come forward with additional evidence. Plaintiff has done so by supplementing the summary judgment record to include testimony of remarks expressing discriminatory bias and collusion by Mr. Seeger and Ms. Green to fire Mrs. Cooley because they believed she was too old and broken down to continue in her job. Rule 56 requires denial of summary judgment.

III.     DEFENDANT TERMINATED PLAINTIFF BECAUSE OF HER AGE.

The Age Discrimination in Employment Act (ADEA), prohibits employers from discharging an employee because of that employee's age. 29 U.S.C. § 623(a)(1), 631(a). In *Gross v. FBL Financial Services, Inc.*, the United States Supreme Court found that the language "because of" requires proof that age was the "but-for" cause of an employee's discharge. 557 U.S. 167, 176, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009). In proving an age discrimination claim, a plaintiff can establish a discrimination through either direct evidence or a variation of the burden-shifting test outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), for circumstantial evidence. *Damon v. Fleming Supermarkets of Fla., Inc*., 196 F.3d 1354, 1358 (11th Cir. 1999) (internal citation omitted); *Shackelford v. Publix Super Mkts., Inc*., 2014 U.S. Dist. LEXIS 146029, *30 (N.D. Ala Oct 14, 2014).

A.   <u>Mr. Seeger's statements that because of Mrs. Cooley's age, it was</u>
<u>time for her to retire constitute direct evidence of age discrimination.</u>

In the context of discrimination cases, "direct evidence" is evidence from
which a jury could find a causal link between an adverse employment action and a
protected personal characteristic. *Wright v. Southland Corp*., 187 F.3d 1287, 1298
(11th Cir. 1999). Generally, "a statement that (1) is by the employer (i.e., by the
decisionmaker), (2) reflects a discriminatory attitude, and (3) ties the
discriminatory attitude to the relevant employment decision," is direct evidence. *Id*.
at 1294. At the summary judgment stage, even if the factual predicate for the direct
evidence is disputed, if "a jury could find that the decisionmaker had made the
statement, there [is] direct evidence . . . precluding summary judgment." *Bass v.
Bd. of Cnty. Comm'rs, Orange Cnty., Fla*., 256 F.3d 1095, 1112 (11th Cir.
2001); *see also Merritt v. Dillard Paper Co*., 120 F.3d 1181, 1189 (11th Cir.
1997) ("Where the non-movant presents direct evidence that, if believed by the
jury, would be sufficient to win at trial, summary judgment is not appropriate even
where the movant presents conflicting evidence.") (quoting *Mize v. Jefferson City
Bd. of Educ*., 93 F.3d 739, 742 (11th Cir. 1996)).

In *Merritt*, the Eleventh Circuit described "a long line of cases" in which it
"found direct evidence where 'actions or statements of an employer reflect [] a
discriminatory or retaliatory attitude correlating to the discrimination or retaliation
complained of by the employee.'" *Id*. at 1189-90 (quoting *Caban-Wheeler v. Elsea*,

904 F.2d 1549, 1555 (11th Cir.1990)). Those cases include: *Wright v Southland Corp*, 187 F.3d 1287, 1304 (11th Cir. 1999) (manager remark that plaintiff "might want to cease working as a 7-11 store manager because he may be getting too old to understand the store's new computer programs); *E.E.O.C. v. Alton Packaging Corp*., 901 F.2d 920, 923 (11th Cir. 1990)(general manager's statement that "if it was his company, he wouldn't hire any black people"); *Sennello v. Reserve Life Ins. Co*., 872 F.2d 393, 394, 395 (11th Cir. 1989) (statement that "we can't have women in management"); *Miles v. M.N.C. Corp*., 750 F.2d 867, 874-75 (11th Cir. 1985) (plant manager's statement that he wouldn't hire blacks because "[h]alf of them weren't worth a shit"); *Bell v. Birmingham Linen Serv*., 715 F.2d 1552, 1553, 1557 (11th Cir. 1983) (supervisor's statement that he would not put woman in washerman position because "every woman in the plant would want to go into the washroom"). In *Buckley v. Hosp. Corp. of Am., Inc*., 758 F.2d 1525 (11th Cir. 1985), an age discrimination case, the Eleventh Circuit considered, among other evidence, the decisionmaker's comments about needing new blood  and recruiting younger workers and the age of the employees who replaced the plaintiff. The appellate court found that there was "substantial direct evidence from which a reasonable jury could conclude that defendants acted with discriminatory intent." *Id*. at 1530.

In this case, Mrs. Cooley presented direct evidence that Mark Seeger, the district manager who partnered with HR to terminate her said to her in the months leading up to her termination that at her age she needed to think about retiring. (Ex. 7, Cooley Depo, pp. 130:13-131:14, 144:3-145:5). *See Shackelford v. Publix Super Mkts., Inc*., 2014 U.S. Dist. LEXIS 146029, *30-36 (N.D. Ala. Oct. 14, 2014) (denying summary judgment in an ADEA case finding that the remarks "Publix needs more younger workers because they are more reliable and it makes our image look better" and agreement that Publix needed to hire more young, white women to "mirror [its] clientele"). Mr. Seeger was a decision maker for Mrs. Cooley's termination, his remarks reflect a discriminatory attitude, and they tie the discriminatory attitude to the employment decision at issue (he terminated Mrs. Cooley when she was 60 years old). *See Wright*, 187 F.3d at 1294; *Shackelford*, 2014 U.S. Dist. LEXIS 1460209 at *30-36.

Because Mrs. Cooley has supported her age discrimination claim by direct evidence, the Defendant "must prove that the same employment decision would have been made absent any discriminatory intent." *Van Voorhis v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*., 512 F.3d 1296, 1300 (11th Cir. 2008). Production of a legitimate, nondiscriminatory reason for a disputed employment action is not sufficient to meet this burden. *Alton Packaging Corp*., 901 F.2d 920, 924-25, Rather,

> [a]t the summary judgment stage, the employer can prevail on this issue only if the record evidence that its employment decision was not based on discrimination is so strong that a reasonable trier of fact must so conclude; in other words, there must be no genuine issue of fact but that the employer would have made the same employment decision even absent the discriminatory motive.

*Burns v. Gadsden State Community College*, 908 F.2d 1512, 1518 (11th Cir. 1990).

Defendant cannot make such a showing here. Defendant's contention that Mrs. Cooley violated its Wage and Hour policy by working employees off the clock may be sufficient to demonstrate a legitimate, nondiscriminatory reason for her termination under the *McDonnell Douglas* framework if her age discrimination claim rested only on circumstantial evidence, but the argument does not establish by a preponderance of the evidence that Mrs. Cooley  would have been fired even absent Defendant's discriminatory intent. Mrs. Cooley presented a question of fact about whether the violations were manufactured by Mr. Seeger and Ms. Green because of Mrs. Cooley's age and whether wage and hour violations were uniformly disciplined by Mr. Seeger since younger employees Jay Moses and Christine Stewart  were not terminated for violations.[6] This is sufficient to raise a

---

[6]     Moreover, under the Defendant's policy, any employee who knowingly works off the clock violates the wage and hour policy and should be terminated.  (Ex 9, Seeger Depo, pp. 103:5-104:8).  The records produced by Defendant that it contends show work off the clock show the alleged work occurred when Mrs. Cooley was not at the store. The employee statements submitted by Defendant in summary judgment show admissions by employees, including Sheila Green, to working off the clock even though they had not been told to do so. Per Defendant's policy, all these employees should have been fired.

question of fact regarding whether Mrs. Cooley would have been terminated even absent the discriminatory motive. *See* Shackleford, 2014 U.S. DIST LEXIS146029 at *34-36. Additionally, "a reasonable juror could accept that [Mr. Seeger] made the discriminatory sounding remarks and that the remarks are sufficient evidence of a discriminatory motive which was the 'but for' cause of [Mrs. Cooley's] dismissal." *See Mora v. Jackson Mem'l Found., Inc*., 597 F.3d 1201, 1204 (11th Cir. 2010) (vacating summary judgment and explaining that the plaintiff's evidence of discriminatory remarks "should be taken at face value" and to conclude otherwise "would be to deny Plaintiff the benefit of resolving all reasonable inferences in her favor as the nonmoving party."). Accordingly, the Court must deny the Defendant's motion with respect to Mrs. Cooley's ADEA claim.

      B.    <u>Circumstantial evidence shows Defendant fired Mrs. Cooley because of her age.</u>

Under the *McDonnell Douglas* framework, a plaintiff creates an inference of discrimination through a prima facie case. The employer can rebut that presumption by presenting admissible evidence of legitimate non-discriminatory reasons that motivated its action. If it does so, the burden shifts back to the plaintiff to produce evidence that the employer's proffered reasons are a pretext for discrimination. *Id*.

To establish a prima facie case of age discrimination under the ADEA, Ms. Cooley must demonstrate: (1) that she is a member of the protected age group and

was adversely affected by an employment decision; (2) that she was qualified for her position; and (3) "evidence by which a fact finder reasonably could conclude that the employer intended to discriminate on the basis of age in reaching that decision." *Vaughan v. Morgan Stanley DW Inc.*, 158 Fed. Appx. 205, 207 (11th Cir. 2005) (citing *Watkins v. Sverdrup Tech., Inc.*, 153 F.3d 1308, 1314 (11th Cir. 1998)); *Mitchel lv Worldwide Underwriters Ins. Co.*, 967 F.2d 565, 566 (11th Cir. 1992).[7]

    1.    Mr. Seeger's age-related remarks and reputation for age bias establish a causal link between Mrs. Cooley's age and her termination.

---

[7]    Defendant takes too rigid an approach to the prima facie elements and incorrectly argues to the Court that the only way Plaintiff can establish a case is by showing a replacement younger than her.  This ignores the long-standing authority in this Circuit that "[t]he methods of presenting a prima facie case are not fixed; they are flexible and depend to a large degree upon the employment situation." *Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1087 (11th Cir. 2004) (*citing Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1185 (11th Cir. 1984)).Indeed, the Eleventh Circuit has held that, absent an example of a similarly situated employee, "summary judgment is appropriate *where no other evidence of discrimination is present," Holifield v. Reno,* 115 F.3d 1555, 1563 (11th Cir. 1997) (emphasis added), and *Rioux v. City of Atlanta,* 520 F.3d 1269, 1277 (11th Cir. Mar. 18, 2008) held that the plaintiff had come forward with other evidence "from which an inference of discrimination could be found."

    In *Corbin v. Southland Int'l Trucks, Inc.,* the plaintiff sued his employer claiming that he had been terminated due to his age. 25 F.3d 1545 (11th Cir. 1994). The district court granted summary judgment, concluding that Corbin had failed to make out a prima facie case of age discrimination because he had failed to prove that he was replaced. *Id.* at 1548. The Eleventh Circuit, finding reversible error, held that the prima facie case could be met by showing "(1) that he was in a protected age group at the time of his termination, (2) that he was qualified for his current position at the time of his termination, and (3) evidence from which a fact finder could reasonably conclude that the employer intended to discriminate on the basis of age." *Id.* at 1549. Several age discrimination suits, particularly reductions-in-force and position eliminations, have forgone the need for comparator evidence when "other [circumstantial] evidence of discrimination" exists. *See, e.g., Chapman,* 180 F.3d at 1244 (11th Cir. 1999); *Mitchell v. Worldwide Underwriters. Ins. Co.,* 967 F.2d 565, 567-68 (11th Cir. 1992); *Benson v. Tocco,* 113 F.3d 1203, 1207 (11th Cir. 1997); *Verbraeken v. Westinghouse Elec. Corp.,* 881 F.2d 1041, 1045-46 (11th Cir. 1989).

There is no dispute that Mrs. Cooley, who was sixty when she was terminated, established the first element of a prima facie case. It is not in dispute she was qualified. (Ex 9, Seeger Depo, 115:23-116:2).  Ms. Cooley presented evidence from which a jury could find Ms. Cooley's age was the cause of her termination. Prior to Mrs. Cooley's termination, Mr. Seeger said to both Mrs. Cooley and her daughter that at Mrs. Cooley's age, she should think of retiring. (Ex 7, Cooley Depo, pp. 130:13-131:14, 135:19-136:8, 140:13-18, 144:3-145:5, 145:21-146:6; Ex 10, Cooley Dec, ¶¶ 16, 21-23; Ex 5, Scott Depo, pp. 20:21-22:23, 45:22-46:21).  Mrs. Cooley also presented evidence of Mr. Seeger's reputation for terminating older employees.   A case that illustrates the significance of this evidence in establishing a prima facie case of age discrimination is *Hunter v. Mobis Ala., LLC*, 559 F. Supp. 2d 1247 (M.D. Ala. 2008).  In *Hunter*, a pregnancy discrimination case, District Judge Harold Albritton analyzed how the prima facie model is flexible by focusing on the history of age discrimination cases, and evidence of a replacement outside the protected class is not necessary when other evidence of discrimination exists.  *Hunter v. Mobis Ala., LLC*, 559 F. Supp. 2d 1247, 1256-1257 (M.D. Ala. 2008).

In *Hunter*, Judge Albritton found that evidence the decision maker had a reputation of discriminating against pregnant employees coupled with remark that

he could not afford an employee "like the plaintiff"[8] suggested the plaintiff's

pregnancy was the reason she was fired.  *See Hunter*, 559 F. Supp. 2d at 1257-

1258.  This analysis applies to Mrs. Cooley's situation.  Mr. Seegar's remarks that

due to her age, Mrs. Cooley should retire, coupled with his reputation for

discriminating against older employees, evidence a discriminatory motive.

>    2.    Defendant replaced Mrs. Cooley with a substantially younger
>          employee, evidencing age bias.

Additionally, Mrs. Cooley's replacement, Sheila Green was almost five

years younger than her.  While there is not a bright-line rule defining "substantially

younger" under the ADEA, presenting evidence of discriminatory animus beyond a

mere age difference will deem a smaller age difference sufficient to meet the

"substantially younger" element of the ADEA prima face case. *See Damon v.*

*Fleming Supermarkets of Fla., Inc*., 196 F.3d 1354, 1360 (11th Cir. 1999) (holding

that a 42-year-old plaintiff, who was replaced by a 37-year-old, met the

"substantially younger" element of the prima facie ADEA case); *Carter v.*

*DecisionOne Corp*., 122 F.3d 997, 1003 (11th Cir. 1997) (holding that a 39-year-

old was "substantially younger" than a 42-year-old).  The Eleventh Circuit has

found that comparators as much as three (3) years younger than the Plaintiff can

satisfy the "substantially younger" requirement. *See Phillips v. Aaron Rents, Inc.*,

---

[8]    The employer maintained the remarks were made because the decision maker viewed the plaintiff's large number of tardies as grounds for termination and made her a problem employee.

262 Fed. Appx. 202, 209 n.3 (11th Cir. 2008)  The evidence presented by Mrs. Cooley that she was replaced by someone substantially younger coupled with Mr. Seeger's age-based remarks and reputation for age-bias evidences age discrimination caused her termination.

   3.   Under the cat's paw theory, Mr. Seeger's and Ms. Green's age bias is attributable to the Defendant and Emily Broussard.

Defendant attempts to in the decision to terminate Mrs. Cooley solely on Emily Broussard to avoid the discriminatory animus of Mr. Seeger and Ms. Green. Mrs. Cooley presented evidence that Mr. Seeger was a decision maker for her termination, and under Rule 56 the Court is obligated to draw that conclusion. Additionally, Mrs. Cooley presented evidence that attributes Mr. Seeger's and Ms. Green's animus to Ms. Broussard. In an age discrimination case, a plaintiff can establish but-for causation even where the person who ultimately decided to take the adverse employment action was neutral and unbiased. *See Godwin v. WellStar Health Sys.*, 615 Fed. Appx. 518, 528 (11th Cir. 2015) (*citing Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999)). The cat's paw theory establishes that a decision-maker can be liable even when he has no discriminatory animus if he is influenced by the conduct of another that is the product of such discriminatory animus. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 131 S. Ct. 1186, 1194, 179 L. Ed. 2d 144 (2011). In *Staub*, the United States Supreme Court held that an employer could be liable if the subordinate supervisor performed an act

motivated by animus that was intended to cause an adverse employment action and that act was the proximate cause for the employment action. *Id.*

In order to succeed under a cat's paw theory of liability, an ADEA plaintiff must show more than that her adverse employment action would not have occurred in the absence of the action taken by the individuals (Seeger and Green) with the alleged unlawful animus. Rather, the plaintiff must show that the biased individual's action had a determinative influence on the ultimate decision or was a determinative cause. *See Godwin*, 615 Fed. Appx. at 529.

The record contains sufficient evidence to create a genuine issue of material fact as to whether Mr. Seeger and Ms. Green took steps to have Mrs. Cooley fired because of her age because they felt she was too old to remain in her job. They coerced and influenced statements from employees to get Mrs. Cooley fired. Mrs. Broussard relied on those statements and what was presented to her by Mr. Seeger in her review of Ms. Cooley's situation.[9] The evidence permits a jury to conclude that Mr. Seeger and Ms. Green intended the precise adverse action taken against Mrs. Cooley, termination.  This evidence establishes a causal link between

---

[9]     When asked in her deposition about the evidence contradicting Mr. Cooley working in the store, Ms. Broussard's testimony clarified she gave great weight to the statements obtained by Mr. Seeger. (Ex 2, Broussard Depo, pp. 73:17-74:02, 76:22-77:3, 92:13-83:1).  When asked to identify Ms. Cooley's wage and hour violations, Ms. Broussard referenced her notes and emphasized the statements obtained by Mr. Seeger. (Id., pp. 83:21-12). Viewing the evidence in a light most favorable to Mrs. Cooley as required by Rule 56, Ms. Broussard was manipulated into her conclusions by Mr. Seeger.

Seeger's animus and action s and any decision reached by Ms. Broussard.

Summary judgment must be denied.

>    4.    Mrs. Cooley presented evidence of pretext

Defendant contends it terminated Mrs. Cooley for "working employees off the clock and allowing non-employees to work at the store." (Doc. 31, p. 17). In analyzing this case as a circumstantial evidence case, to survive summary judgment, Mrs. Cooley must provide evidence that creates a genuine issue of material fact that this reason is a pretext for discrimination. *EEOC v. Comcast of Ga., Inc.*, 560 F. Supp. 2d 1300, 1311 (N.D. Ga. 2008). "Put another way, the 'pretext analysis focuses on a narrow question: Would the proffered evidence allow a reasonable factfinder to conclude that the articulated reason for the decision was not the real reason?'" *Id.* (quoting *Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1276 (11th Cir. 2002)).

>    a.    Mrs. Cooley's denials establish pretext.

A Plaintiff's denial of a concrete fact requires denial of summary judgment. *Munoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340, 1345-1346 (11th Cir. 2000).  In *Munoz v. Oceanside Resorts, Inc.*, the Eleventh Circuit reviewed the claims of an employee who alleged his termination was discriminatory. The employer argued that it terminated the employee for insubordination. *Munoz*, 223 F.3d at 1345. The Eleventh Circuit reversed the trial court's finding that the employee failed to

present evidence of pretext finding that the employee's denials of the underlying conduct directly contradicted the reason given by the employer creating a question of fact "properly resolved by the jury." *Id.*

The Eleventh Circuit made this finding over the argument of the employer that whether the underlying conduct truly occurred was irrelevant. The employer argued the employer's subjective belief as to whether the conduct occurred was dispositive. *Id.* The Eleventh Circuit rejected this argument finding that the employee could call into the question the credibility of the decision maker thereby allowing the jury to reject the testimony of the decision maker as to its subjective belief. *Id.* The Eleventh Circuit concluded that a jury could accept the employee's theory that the employer "concocted a scheme that included both a bogus reprimand and a subsequent false accusation of insubordination to cover its discriminatory desire to discharge an older employee." *Id.*

Mrs. Cooley denied, and continues to deny, working employees off the clock, knowing employees working off the clock, and/or working her husband at the store. The time records show that any "off the clock" work was performed when Mrs. Cooley was not in the store. The only work performed by Mr. Cooley was done with Mr. Seeger at Mr. Seeger's request. Further, there is evidence Ms. Green and Mr. Seeger coerced and threatened employees into giving false statements that Mrs. Cooley knowingly worked them off the clock and had her

husband perform work in the store. A jury's acceptance of one or more of these facts discredits the reasons given by Dollar General for terminating Mrs. Cooley. Acceptance of any of these facts by the jury allows it to reject the Defendant's reason rendering summary judgment improper. *See Alexander v. Chattahoochee Valley Cmty Coll.*, 325 F. Supp. 2d 1274, 1292 n.31 (M.D. Ala. 2004) (quoting Eleventh Circuit Pattern Jury Instructions (Civil Cases), Basic Instructions 3). "This is consistent with common sense and with the Eleventh Circuit's standard pattern jury instructions for civil cases, which instruct jurors that: 'You should decide whether you believe what each witness had to say . . . [and] . . . in making that decision, you may believe or disbelieve any witness, in whole or in part." *Id.*

<blockquote>b. Mr. Seeger's remarks establish pretext.</blockquote>

Discriminatory remarks can establish pretext. *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1362-63 (11th Cir. 1999); *Jones v. Bessemer Carraway Medical Ctr.*, 151 F.3d 1321, 1323 n. 11 (11th Cir. 1998); *Alphin v. Sears, Roebuck & Co.*, 940 F.2d 1497, 1499 (11th Cir. 1991). Such remarks are evidence of pretext because they shed light on the decision maker's state of mind at the time that he made the challenged employment decision. *Id.* Mr. Seeger's remarks about Mrs. Cooley's age and her inability to physically do her job reveal his state of mind and allow a jury to conclude that discrimination motivated the decision to terminate Mrs. Cooley.

Because Mrs. Cooley has presented evidence that shows Mr. Seeger had a bias against her because of her age and physical impairment, he and Sheila Green conspired to manufacture false evidence to fire Mrs. Cooley, and evidence that Mrs. Cooley did not engage in the conduct of which she was accused, disputed issues of fact exist as to the Defendant's reason for firing Mrs. Cooley. Rule 56 requires that this dispute be resolved in Mrs. Cooley's favor and summary judgment be denied.

## II. THE DEFENDANT TERMINATED MRS. COOLEY BECAUSE OF HER DISABILITY.

Congress enacted the Americans with Disabilities Act in order to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C.A. § 12101(b)(1) (West 2005). In enacting the ADA, Congress expressed its intent to address discrimination based on stereotypical notions about disabilities. *Id.* § 12101(a)(7). Toward that end, Congress defined "disability" under the ADA to include not only those individuals with physical or mental impairments, but also those individuals regarded as having such impairments. *Id.* § 12102(2).

The Americans with Disabilities Act (ADA) prohibits discrimination based on disability. More specifically, the ADA bars covered employers from discriminating against "a qualified individual on the basis of disability" in the "terms, conditions, [or] privileges of employment." 42 U.S.C. § 12112(a) (2000)

(amended 2008).  A violation of the ADA can be shown either through direct evidence, which immediately precludes summary judgment, *Jones v Bessemer Carraway, Med. Ctr.*, 151 F.3d 1321, 1323 n.11 (11th Cir. 1998), or through circumstantial evidence using the familiar *McDonnell Douglas* framework, *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1333 (11th Cir. 1999).

A.    Mrs. Cooley presented direct evidence of disability discrimination.

When Mrs. Cooley and her daughter complained to Mr. Seeger that due to the ongoing issues with her foot she required help in the store, he evidences his discriminatory animus by telling her to think about retiring if she could not do the manager's position 100%.  (Ex 7, Cooley Depo, pp. 130:13-131:14, 144:3-145:5; Ex 5, Scott Depo, pp. 45:22-46:21).  Just as was argued above with respect to age discrimination, Mr. Seeger's remarks reveal, without the necessity of inference, that he felt Mrs. Cooley's employment with Defendant should end due to her physical limitations.  This direct evidence of disability discrimination requires a denial of summary judgment.

B.    Mrs. Cooley presented circumstantial evidence of disability discrimination.

To establish an ADA violation a plaintiff may use circumstantial evidence according to the traditional burden-shifting analysis that was applied above. *Wascura v. City of South Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001);

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802--04, 93 S. Ct. 1817, 1824-25, 36 L. Ed. 2d 668 (1973).

      1.     The ADA applied to Mrs. Cooley.

      Defendant disputes in its brief that Mrs. Cooley is covered by the ADA. (Doc. 31, p. 14). This assertion by Defendant is not developed into an argument, and the Defendant does not point to any evidence to support it. Therefore, Defendant has not carried its Rule 56 burden as it relates to contention, but Plaintiff will address it out of an abundance of caution.

      A person has a disability if she "has a physical or mental impairment that substantially limits one or more . . . major life activities."  42 U.S.C. § 12102(1)(A) (2000) (amended 2008); 29 C.F.R. § 1630.2(g) (2011). An individual qualifies as disabled if she is "regarded as having [a disabling] impairment." 42 U.S.C. § 12102(3)(A). The EEOC regulations define one who is "regarded as having such an impairment" as an individual who (1) has a physical or mental impairment that does not substantially limit major life activities but is treated by her employer as constituting such limitation; (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) has no illness or malady defined by the EEOC as a physical or mental impairment but is treated by her employer as having a substantially limiting impairment." 29 C.F.R. § 1630.2(1).

Mrs. Cooley presented establishing both criteria. She produced evidence she was, and continues to be, substantially limited in her ability to stand, walk, and climb.  (Doc. 10, Cooley Dec., ¶10). She walked, and continues to walk, with a limp.  (Id.)  She and her daughter discussed these issues with Mr. Seeger, and as discussed above, he responded by commenting he felt it kept her from doing her job. Mrs. Cooley presented sufficient evidence to establish she is disabled as anticipated by the ADA.

> 2.   There is disputed evidence that Mr. Seeger and Ms. Broussard knew of her disability.

Defendant's sole challenge to Mrs. Cooley's ability to present circumstantial evidence of disability discrimination is to argue Mr. Seeger and Ms. Broussard lacked knowledge of the problems with her foot. Mrs. Cooley has presented evidence that would allow a jury to conclude Mr. Seeger and Ms. Broussard had knowledge of Mrs. Cooley's disability:

- Mrs. Cooley and her daughter discussed her disability with Mr. Seeger.

- Mr. Seeger told Mrs. Cooley if she could not physically do her job, it was time for her to retire.

- Sheila Green complained to Mr. Seeger that Mrs. Cooley was having difficulty physically doing work and as a result it was putting a lot of physical labor on Ms. Green.

- The effects of Mrs. Cooley's disability were obvious: she walked with a limp, wore either a brace or boot from 2012 through her termination, and she had to lean against something when standing.

- A few weeks before Mrs. Cooley was terminated, the doctor treating her foot continued her light duty. Mr. Seeger testified this is something that he would have been emailed about.

- Mrs. Cooley communicated with HR, the department in which Mrs. Broussard was employed, about medical treatment for her foot.

Defendant's motion for summary judgment should be denied because Mrs. Cooley has presented evidence creating a disputed issue of fact which a jury should resolve. She adopts and incorporates by reference the discussion above on pretext.

## CONCLUSION

Defendant moved for summary judgment by arguing there was no evidence of discrimination toward Mrs. Cooley in the record. This was because the Defendant intentionally omitted that evidence from its filings. Mrs. Cooley presented evidence that Mark Seeger and Sheila Green conspired to terminate Mrs. Cooley because they felt she could not longer due her job due to her age and disability. The coerced employees into giving false statements, and those statements were presented to Emily Broussard so that she and Mr. Seeger could partner in Mrs. Cooley's termination. When the Defendant received complaints

from employees about having been forced to lie about Mrs. Cooley to get her fired,

Defendant gave less than an hour and a half's consideration to looking at those

complaints.  Summary judgment must be denied.

Respectfully submitted,

/s/ Heather Newsom Leonard
Heather Newsom Leonard
HEATHER NEWSOM LEONARD
ASB-1152-061H

**OF COUNSEL:**

**HEATHER LEONARD, P.C.**
2105 Devereux Circle, Suite 111
Birmingham, Alabama 35243
Phone: (205) 977-5421
Fax: (205) 278-1400
Email: Heather@HeatherLeonardPC.com

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above and foregoing has been served upon the following on October 11, 2018, via:

( )    Electronic Mail
(  )   First Class Mail
(  )   Hand Delivery
(X )   Other: the Court's electronic filing system

Stanley E. Graham
John Park
Waller, Lansden, Dortch & Davis, LLP
511 Union Street, Suite 2700
Nashville, TN 37219

/s/ Heather Newsom Leonard
OF COUNSEL